The Honorable Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR20-215RSM |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| SAMANTHA FRANCES BROOKS, | |
| Defendant. | **October 8, 2021 @ 9:00 am** |

### I. Introduction

Defense respectfully requests that the Court grant a variance in this matter; and impose a sentence of 18 months of GPS location monitoring, followed by 3 years of supervised release, and 100 hours of community service.   An 18-month recommendation is at the top end of the advisory guidelines (which are 12-18 months in prison), but the request of defense would allow Samantha Brooks[1] to continue

---

[1] Samantha, "Sam", Brooks uses they/them pronouns and is Non-binary and Trans. For purposes of this memorandum, defense will refer to the defendant as Ms. Brooks.

**DEFENDANT'S SENTENCING MEMORANDUM- 1**

**MICHELE SHAW, P.S.**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

working full time, which provides Ms. Brooks with health insurance and benefits, while continuing to participate in weekly therapy with Doug McClosky, LFMHT[2].

This sentence will serve as a just punishment to Ms. Brooks, while also promoting the ends of punishment and rehabilitation along with other goals of sentencing.

## II.     Guideline Range

Defense concurs with the calculations set forth by U.S. Probation in their PSI, para #3, for the crime of Interference with Railroad Signaling System; 18 U.S.C. sec 1992(a)(5).

| | | |
|---|---|---|
| A. | Offense Level for Interfering with Railroad Signaling System | 18 |
| B. | Adjustment for Minor Role in the Offense | -2 |
| C. | Adjusted Offense level (Subtotal) | 16 |
| D. | Acceptance of Responsibility | -3 |
| E. | Total Offense Level: | 13 |

Ms. Brooks is in Criminal History Category I, with a sentencing guidelines range of 12-18 months of imprisonment.

## III.     Sentencing Factors Under 18 U.S.C. Sec 3553(a)

### A.  Nature and Circumstances of the Offense

The Presentence Report and Plea Agreement accurately describe Ms. Brooks' conduct in this case.

---

[2] Exhibit A, pp.1-2, Letter from Doug McClosky, LFMHT

**DEFENDANT'S SENTENCING MEMORANDUM- 2**

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

**B. History and Characteristics of the Defendant**

Ms. Brooks has led an exemplary, yet often challenging, life for a young person. They are selfless, sensitive, gifted, generous, extremely intelligent, introspective, and are very loved. Exhibit A, pp 1-6.  Ms. Brooks is viewed by their extended family as, "exceptional for their maturity, responsibility and rigorous awareness of their place in the world." In addition, Ms. Brooks has been described as being "driven by deep principals with a fierce commitment to protect and elevate the vulnerable…".   Exhibit A, pg. 3. Ms. Brooks is not an anarchist and has never associated with persons who identify as anarchists.

While Ms. Brooks felt very comfortable "coming out" as Trans in Bellingham, they did not feel that same level of comfort while they were going through their adolescence living in a smaller community in the Olympic Peninsula. During that period in their life, Ms. Brooks "came out" as gay or queer, and was subsequently the victim of violence and frequent vitriol during this period of their life. Ms. Brooks tried to conceal their victimization during this time, but ultimately shared part of what they were being subjected to at high school with their parents. Ms. Brooks' parents both realized that they did not have the expertise or experience to help their child navigate this difficult journey and found a mental health therapist for Ms. Brooks. Ms. Brooks and their family continue to place a  high value on mental health therapy. It is the core of Ms. Brooks' stability at this time.

Ms. Brooks has fully embraced who they are, and they thrived while pursuing their undergraduate degree in Environmental Science at Western Washington University. Ms. Brooks was employed by the Port of Bellingham, Department of Marine Science, as the Marine Life Center Representative for almost three years. This was a dream job for Ms. Brooks. Following the federal charges that were highly

DEFENDANT'S SENTENCING MEMORANDUM- 3

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

publicized [3] and came to the attention of many people in Bellingham, Ms. Brooks was terminated from this position and suspended from Western Washington University.[4]

Ms. Brooks was committed to serving those less fortunate who were homeless in Bellingham, and they provided meal train support along with help finding resources. Ms. Brooks drove homeless folks to medical appointments, helped them keep track of what food and supplies they needed, and also helped people winterize their tents. The night this incident occurred Ms. Brooks was serving the homeless encampment that was in front of City Hall in Bellingham. While this wasn't a formal schedule they were working, there were other like-minded volunteers assisting homeless persons at this encampment. Ms. Brooks took the responsibility she adopted as their own very seriously. For example, on the prior two weekends, when persons in the encampment had to go to the hospital for urgent medical care, Ms. Brooks accompanied them. After a couple of very intense weeks of school, work and this stressful volunteer work, Ms. Brooks was literally exhausted, sleep deprived and not in the best state of mind when Ms. Ellen Reiche picked them up for a break from the encampment the night of November 30, 2020.

Ms. Brooks recognized they could not afford to continue to live in Bellingham, since they were unemployed. Between Ms. Brooks' release from federal custody on November 30, 2020, and September 5, 2021, they applied for numerous jobs on a weekly basis, most of which they were overqualified for. After the Seattle Times article covering Ms. Brooks' plea was published, Ms. Brooks lost a job they had

---

[3] Every major news outlet in the country continues to cover this federal matter, and Ms. Brooks is always referred to as a Terrorist. https://www.nytimes.com/2020/12/02/us/train-shunt-washington.html
https://www.seattletimes.com/seattle-news/bellingham-woman-pleads-guilty-to-terror-charge-on-train-tracks/
[4] Ms. Brooks appealed this decision and was fortunate to have the support of several professors to finish their last two weeks of classes and receive their bachelor's degree. However, Ms. Brooks has a "suspended" on their college record, which will not be vacated. Therefore, any graduate program will make a follow up inquiry or ask for an explanation.

DEFENDANT'S SENTENCING
MEMORANDUM- 4

**MICHELE SHAW, P.S.**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

finally secured in Poulsbo. Ms. Brooks was very recently hired at a store in Poulsbo, is working full time and is thrilled to have health insurance and benefits. They have never been unemployed for 9-10 months since they started working when they were 14-15 years of age. Ms. Brooks is very afraid of losing this job, given their relentless effort the last 10 months to find employment.[5] Every facet of Ms. Brooks' life has been greatly impacted by this case, with unemployment and lack of health insurance being very high stressors.

    C.    **The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the community from further crimes by this defendant. 18 U.S.C. sec. 3553(a)(2)(B-C). Given Ms. Brooks' history and characteristics, and their respect towards the Court and of authority, it is clear that specific deterrence has already been attained. A period of incarceration is not necessary.

The demands of general deterrence in this case do not weigh in favor of incarceration. Prior to the arrest of Ms. Brooks, there were over 40 shunting incidents in the Bellingham area, and many anarchists were actively protesting the Coastal GasLink Pipeline project.[6]

The widespread notoriety and federal "terrorist" charges have acted as a general deterrent. It appears that those involved in the prior protests and shunting incidents want to distance themselves from engaging in such risky behavior, to avoid a federal prosecution.

---

[5] Exhibit A, pp 1-2. "The focus of our meetings has been general support and stress management following Sam's arrest, school suspension, loss of employment, isolation from peers, moving home with family, possible cancer diagnosis and job search."

[6] The Government has never suggested that Ms. Brooks had any involvement, whatsoever, in any prior shunting incident, or any ties to any group actively protesting this project.

**DEFENDANT'S SENTENCING MEMORANDUM- 5**

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

Ms. Brooks was arrested for several State charges on November 28, 2020. On November 30, 2020, the Government filed a Complaint, charging Ms. Brooks with Terrorist Attacks and Other Violence Against Railroad Carriers, Dkt. No. 1. Ten days later, the grand jury returned an Indictment, Dkt. No. 15, charging Ms. Brooks with Violence Against Railroad Carriers. Ms. Brooks accepted responsibility for their role in this offense and entered a plea to an amended charge of Interference with Railroad Signaling Systems on July 9, 2021, Dkt. No. 36.

Wide publicity has afforded public notice of the seriousness of the possible consequences, not simply the legal, but also the harm that could have been done.

The failure to impose a sentence that includes a period of incarceration is not a violation of § 3553(a) or inconsistent with the Sentencing Reform Act. While the defense is requesting a variance in this case, it is truly more of a slight deviation. Ms. Brooks is asking this Court to impose 18 months of location monitoring, which limits their life to work, therapy,[7] meeting with U.S. Probation and attending potential medical appointments. If Ms. Brooks serves 18 months on location monitoring, they would be prohibited from going hiking, swimming, traveling, or engaging in activities with peers. The proposed sentence is punitive.[8] However, it keeps Ms. Brooks employed, allows them to save money for graduate school, be insured, have benefits, and maintain their therapeutic relationship with Doug McClosky, LFMHT.

---

[7] Ms. Brooks has weekly counseling sessions via Telehealth.
[8] When utilized in lieu of detention or prison, location monitoring costs taxpayers approximately $4 per day, compared with $87 a day for pretrial detention and $95 a day for post-conviction imprisonment. https://www.uscourts.gov/services-forms/probation-and-pretrial-services/supervision/federal-location-monitoring

**DEFENDANT'S SENTENCING MEMORANDUM- 6**

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

In this case, the relevant facts of Ms. Brooks' prior life and their need for further counseling should also mitigate the general deterrent value of a term of imprisonment. In addition, the continued press interest in and reporting about this case, along with the trial of co-defendant Ellen Reiche, have provided deterrence. What little deterrent value a short prison sentence might offer should be measured against the other forms of punishment Ms. Brooks has been dealing with and will continue to be subjected to, along with the very real needs they have to continue counseling and to have access to medical care.

The general-deterrence value of a sentence is likely to be much higher in cases that fall within the heartland of similar offenses, like the very typical bank robberies, where other potential offenders considering committing such an offense will be similarly situated to the defendant.

### D.  The Need to Avoid Unwarranted Sentencing Disparities

Sentencing in this case is complicated by the dearth of recent cases reported.  Few reported cases of 18 U.S.C. §1992 exist and fewer still even mention the final disposition. In earlier cases, the application of the statute was used for union member activities. See e.g., Stanley v. U.S., 245 F.2d 427 (6th Cir. 1957) (Substantive and conspiracy charges for union leaders one of whom hired teens to burn down a trestle leading to the mine that the union was out on strike) Davis v. U.S, 357 F.2d 438 (5th Cir. 1966) (Substantive and conspiracy charges for union members who placed dynamite near a railroad bridge.) Some later cases involved the misuse of railroad property. See e.g., U.S. v. Dreding, 547 F.2d 471 (9th Cir. 1976) (Turned angle cock impaired the train's braking ability and two trains collided, causing serious damage to both.) U.S. v. Turpin, 698 F.2d 351 (8th Cir. 1982) (Man parks car across train tracks trying to conceal murder of another.) U.S. v. Alcorn 329 F.3d 759 (10th Cir. 2003)(Man tries to cross construction area, gets stuck, uses excavator to free his car, leaves bucket of the excavator over the

DEFENDANT'S SENTENCING
MEMORANDUM- 7

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

railroad tracks. Train hits the excavator causing $3.2 million in damage.) U.S. v. Youts, 229 F.3d 1312 (10th Cir. 2000) (Man steals an engine to ride home, puts engine in reverse, full throttle. Train derails causing over a quarter million dollars in damages.)

The U.S. Sentencing Guidelines Commission publishes statistical information regarding the use of specific guidelines each year. Over the last five years, there were fewer than 25 cases which applied 2A5.2(a)(2). Of those, one disputed the application of subsection (a)(2) for an incident of pointing a laser pointer toward an aircraft in flight. Finding no evidence of knowledge or of awareness of the effect of the laser might be, the District Court upheld the Defendant's objections to the presentence report. U.S. v. Baca, CR17-2386JB (D. NM October 30, 2018). A second, U.S. v. Rogers, 881 F.3d 1054 (8th Cir. 2018) affirmed the district court finding of reckless endangerment because of information provided that he had previously pointed a laser at a moving vehicle and stopped when the car turned toward him, and he would have been visible in the headlights.

### IV.   Conclusion

Sentencing requires that the Court carefully balance the various factors set forth in 18 U.S. C. § 3553(a). These factors weigh in favor of granting the proposed sentencing recommendation of the defense. In this case, the general deterrent impact of a prison sentence is outweighed by considerations of specific deterrence, just punishment and rehabilitation. This sentence will protect the community, promote respect for the law and deter future crime.

DEFENDANT'S SENTENCING
MEMORANDUM- 8

MICHELE SHAW, P.S.
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

DATED this 1st day of October 2021.

Respectfully Submitted,

  *s/ Michele Shaw*
MICHELE SHAW, WSBA #19561
Law Office of Michele Shaw
2125 Western Ave., #330
Seattle, WA 98121
Telephone: (206) 448-9612
Fax: (206) 319-5473
Email: michele@micheleshawlaw.com

**DEFENDANT'S SENTENCING**
**MEMORANDUM- 9**

**MICHELE SHAW, P.S.**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

# Exhibit A

# Doug McClosky LMFT

September 20th, 2021

The Honorable Chief Judge Ricardo S. Martinez
United States Courthouse
700 Stewart Street, Suite 13134
Seattle, WA 98010-9906

RE:  Sam Brooks

To the Honorable Judge Martinez:

I am a Licensed Marriage and Family Therapist with over 35 years of experience in the Seattle area.  I have been seeing Sam Brooks for individual therapy on a weekly basis since December 12th 2020.  The focus of our meetings has been general support and stress management following Sam's arrest, school suspension, loss of employment, isolation from peers, legal proceedings, move back home with family, possible cancer diagnosis, and job search.  Sam has informed me of their tragically poor decision making on the night of their arrest.

On one hand, as a fallout from their actions, Sam has experienced a very large emotional price that has included panic, anxiety and depression.  On the other hand, I consider all of Sam's reactions to be well within the normal limits of what anyone might experience in similar circumstances.  The impact has been huge, yet they have managed to be remarkably resilient.

Sam's resilience is due partly to the fact that their personal history contains an unusually high number of previous traumatic events including the death of

1611 116TH AVE NE, SUITE 105, BELLEVUE WA 98004
T (206) 245-8993 U WWW.CONTEMPORARYBALANCE.COM

peers and being the victim of multiple personal assaults.  In my years of practice I have seen many people deal with similar events with rage, self-abuse, and heavy drug use.  By contrast, Sam has demonstrated a habit of responding by contributing to positive change in their community.  Sam got involved in environmental science, and volunteered as a medic at a homeless camp.  When asked why, they told me that as a queer youth they never encountered a person in authority who advocated for them.  Sam wants the disenfranchised to receive help and advocacy.  The general direction of Sam's movement through life has not been rage, but attempts to give and to help.  Sam tells me that they have recently found full time work. I hope that they will be able to remain in the community, work, continue counseling, continue their education, and eventually make a lasting positive contribution to society.

Sincerely,

*Doug McClosky, LMFT*

Doug McClosky, LMFT

2

The Honorable Chief Judge Ricardo S. Martinez
United States Courthouse
700 Stewart Street, Suite 13134
Seattle, WA 98101-9906


To the Honorable Judge Martinez:

We are writing to tell you a little bit about our nibling,* Sam Brooks.

Sam (they/them) is one of the most passionate and empathetic people we know. They are strong and tough, but also incredibly sensitive and smart. They are driven by deep principles and a fierce commitment to protect and elevate the vulnerable, from youth in their community to the environment. Given the opportunity, they have immense gifts to offer the world.

When Sam was 15, they went with their English class to an event in Seattle. On the long drive back to Port Townsend that evening an ice storm struck and the teacher driving the van full of kids had to pull over on the side of the highway. The teacher did not know how to put chains on the van, but Sam did. While the class waited, Sam put chains on the wheels. To them, it was no big deal: they just wanted to get their class home safely. But to us it showed leadership and grit at a precocious age.

Sam has a special place in our extended family. They have always been loved by their cousins, and looked to as a role model. Our son is seven now, and has had a difficult year. He has had emotional and social problems as a result of pandemic-related isolation and stress. Over the summer, Sam and he explored beaches, played video games, and generally enjoyed each other's' company. Sam has become a vital confidant to him, able to connect with him when others could not. We feel grateful to have them in our family. It has been a profound pleasure to watch them grow into the person they are today.

Sam has loved nature and animals since early childhood. In college Sam has become interested in environmental sciences, specifically marine biology. We have had many conversations with Sam over the past year about life in academia, and about teaching and research as a career. Their interest in science is driven by a sincere intellectual curiosity and a passion to make the world a better place.

We both teach at UCLA and spend much of our time with students in their early twenties. Sam is exceptional for their maturity, responsibility, and rigorous awareness of their place in the world. We believe Sam would do brilliantly in graduate school, if they choose that path.

Yours sincerely,

Katherine Smith, PhD
Lecturer, UCLA International Institute
Curator, Fowler Museum at UCLA


Timothy Austin, PhD
Professor, UCLA Mathematics Department


*Nibling is a non-binary/non-gender specific term for niece-nephew.

The Honorable Chief Judge Ricardo S. Martinez
United States Courthouse
700 Stewart Street, Suite 13134
Seattle, WA 98101-9906


To the Honorable Judge Martinez:

I'm writing to express my unconditional support and love for my child, Sam Brooks.

From their earliest days, Sam (they/them) has always been empathetic, motivated, hard-working, kind, compassionate, and caring for others. Sam was the child who stood up to bullies and gave their lunch to other kids. They were the child who invited new kids to sit at their table. In elementary school, they received a citizenship award for protecting other kids and making everyone feel welcome. In high school, they created and led a mock trial team for middle schoolers: Their teacher remarked that Sam has a gift for working with kids and pre-teens, making everyone feel comfortable and included, and motivating them to come together. Sam received a citizenship award for this work as well. They have been always an active volunteer in our community and church, while excelling in school and working.

Sam's passion for helping others, especially kids, has never dimmed. Throughout college, they have worked to help homeless people, volunteer in community gardens, intern in marine science field research, lead groups of children in eco-fieldtrips, and more. Their passion has broadened to helping the marine environment, which they made their focus in school and now a career goal. Any walk on the beach with Sam turns into a passionate explanation of every creature, plant, and seashell, and usually ends with a trail of children behind us. Sam displays a unique joy, engagement, and enthusiasm for the world around them that is contagious.

Sam has years ahead of them to share this enthusiasm and to contribute to the world. I believe they have the potential and motivation to be a great force for good in the lives of others. I am eager to see how they can put this chapter behind them and move towards a positive future. With plans for grad school and an interest in research and teaching, I know they can be a leader in their field.

Our family supports Sam whole-heartedly and lovingly. They have parents, grandparents, aunts, and cousins in the community who all want to provide Sam a safe space to rebuild their future. Sam is currently living with me: They are an integral part our household's happiness and a vital connection for our younger child. We are all dedicated to supporting Sam's path towards the future – with therapy, housing, emotional support, further education, financial resources, or anything else they need to continue on a positive path. I hope for the opportunity to help Sam recover and rebuild their bright future as soon as possible.

Thank you for your consideration,

Kim Brooks

Mother of Sam Brooks

September 3, 2021

The Honorable Chief Judge Ricardo S. Martinez
United States Courthouse

Dear Judge Martinez:

Sam has always cared about education and helping others. In fifth grade, they won the award for highest scholastic performance in math in the entire school. Starting in sixth grade they entered the International Baccalaureate Program. The more rigorous education was good for Sam and helped them understand and appreciate the importance of higher educational standards.

We moved to Port Townsend at the start of high school. Sam took advanced English, various AP classes, and participated in running start, so by the time they graduated from high school, they were only one quarter short of also having their AA degree. They participated in Knowledge bowl teams that won state and Mock Trial teams that won at the state and national levels.

During the summers and the gap before college, they worked up to three part time jobs at a time.

At the community level Sam received a Teen Leaders award for outstanding leadership and community service from the local Kiwanis club and an award from our church, Quimper Unitarian Universalist Fellowship, for Ecological Service, during this time.

At this point it is important to put Sam's accomplishments into perspective. During this time, they also came out as lesbian, then non-binary, and began counseling.

The kids and I are fairly involved in our local UU congregation. Sam actively participated in the youth group and in providing childcare to the youngsters. Caring for others is a part of Sam.

Sam takes to heart two very important UU principles:

The inherent worth and dignity of every person.
Respect for the interdependent web of all existence of which we are a part.

These values influence Sam to help others, including volunteering at the homeless encampments. Sam's love of the environment has been continuous from a young age, to graduating from a competitive program in Environmental Science.

Sam can and will do great things. They have been a contributor to their community, capable, and motivated to do good in the world. Society benefits from their participation.

I know Sam will continue to pursue higher education and seek to improve themselves. I will encourage them to continue with counseling that has been helpful to them.

Sincerely,

Dan Brooks

10 September 2021


The Honorable Chief Judge Ricardo S. Martinez
United States Courthouse
700 Stewart Street, Suite 13134
Seattle, WA 98101-9906


To the Honorable Judge Martinez:

I write to tell you of my whole-hearted support for Sam Brooks.

I've known Sam (they/them) from their earliest childhood. Through countless visits over all their years, I've seen Sam become ever more deep-hearted, wise, compassionate, willing to work hard, unselfish, and aimed toward a good future for their community and the world.

I have seen Sam in so many ways... before school already eager to learn; through grade school and high school in theatre; from volunteer to employed involvement in marine science; through engagement in justice issues for lesbian, gay, bisexual, transgender and queer/questioning people; in honest and brave searching to know what life (and their life) is for; in strong care and nurture for their younger sibling. Such love, such character, come from a deep-spirited and full-hearted person.

Knowing Sam has become a gift to me through first knowing their mother, Kim Brooks, in a relationship – first pastoral, now deeply personal – nearly thirty years in the making. Through all these years, Sam and Kim have had a profound effect on my life. And now I'm aware that Kim is investing great energy into helping Sam rebuild their life and find future direction. I'm certain that if Sam is able to pursue their educational goals, they will accomplish these things. I'm even more certain they will do so if continuing to live close to Kim and the family and community that will give support toward a future vital for Sam and the world.

Please give them the opportunity: an investment in one life, in many lives, in a just and more beautiful world.

Thank you for considering my thoughts.

Brooke J. Rolston, retired pastor