Chief District Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAMANTHA FRANCES BROOKS,<br><br>Defendant. | Case No. CR 20-215 RSM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM FOR SAM BROOKS<br><br>Sentencing: October 8, 2021 |

Defendant Sam Brooks placed a shunt on BNSF Railway train tracks in Bellingham. Shunts can delay the trains and shorten the warning times at railroad crossings. Shunts can even cause trains to decouple or derail. These risks are especially acute here because BNSF Railway trains frequently carry crude oil and other hazardous materials. For such a serious offense, the Court should sentence Brooks to a year and a day in prison and three years of supervised release.

## I. The Offense

### A. Criminal Conduct, Charge, and Guilty Plea

On November 28, 2020, near midnight, Brooks and co-defendant Ellen Reiche ventured out onto BNSF tracks near several homes and a public park in Bellingham, Washington. PSR ¶¶ 9–11. Law enforcement officers were watching the tracks in this area

GOV'T SENT. MEMO
NO. CR 20-215 RSM - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

closely because there had been a string of dozens of shunting incidents in this and surrounding areas in the preceding months. PSR ¶ 8. That night in November, a camera placed by the BNSF police spotted the defendants, and sheriff's deputies quickly responded to the scene. PSR ¶ 11. A deputy found Brooks and Reiche bent over the tracks, and he soon found a shunt that they had placed on the tracks in that spot. *Id*. Reiche was carrying a bag that contained wire, a drill with a brush bit, and other items that would be used to place a shunt. *Id*.

Shunts trick the railroad signal system by making it appear that a train is on the tracks. PSR ¶ 10. Any actual trains approaching the area will be forced to slow down, and if already close enough to the shunt, the train engineer (or backup safety systems) will stop the train suddenly to avoid the perceived threat of a collision. *Id*. Freight trains are massive and not designed to stop suddenly, and they can decouple or even derail from the abrupt braking. *Id*. Indeed, as the Court heard during the recent trial of the co-defendant, a shunt placed on BNSF tracks in October 2020 caused a train to engage emergency braking with such suddenness and force that it decoupled and could have derailed. That BNSF trains frequently carry hazardous freight makes such scenarios all the more dangerous.

The shunt placed by the defendants in this case was operational only momentarily, PSR ¶ 12, perhaps because they were interrupted by deputies before firmly affixing the wire to the rails. This is fortunate, because the next train scheduled to pass through was carrying 97 cars of crude oil. PSR ¶ 13. In addition, as the evidence showed at Reiche's trial, this shunt was placed at a location where it would have interfered with a nearby railroad crossing at Cliffside Drive. *Id*. The lead time for the lights, bells, and gates at that crossing would have been severely shortened and perhaps nonexistent, meaning drivers could have driven into the crossing unaware of an approaching train. *Id*.

Brooks was indicted for committing an act of violence against a railroad carrier, in violation of 18 U.S.C. §§ 1992(a)(5), (a)(10), and (c)(1). Dkt. 15. In July 2021, they admitted their role in the offense and pleaded guilty. Dkt. 34. Brooks now appears before the Court for sentencing.

GOV'T SENT. MEMO
NO. CR 20-215 RSM - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### B. Sentencing Guidelines

The parties and the Probation Office agree that the total offense level is 13. PSR ¶ 27; Dkt. 36 at ¶¶ 9–10. Brooks is in criminal history category I. PSR ¶ 30. The resulting Guidelines advisory range is 12 to 18 months.

## II. Recommended Sentence

### A. Imprisonment

The government recommends that the Court sentence Brooks to a year and a day of imprisonment. This custodial term, at the low end of the Guidelines range, would account for two sentencing factors of overriding importance in this case: the seriousness of the offense and general deterrence. 18 U.S.C. § 3553(a)(2)(A), (B).

First, the offense here was exceptionally serious. Derailments are a real risk, and when they happen, the consequences are devastating. There have been at least two examples just within the past year that hit close to home. In one, an oil train derailed near Custer, Washington, causing massive fires and other damage,[1] and in the other, a passenger train bound for Seattle derailed in Montana, killing three people and injuring dozens.[2] Here, if a train had derailed where Brooks placed the shunt, then, at a minimum, numerous nearby homes and the train crew would have been badly affected. And even setting aside the risk of a derailment, the shunt endangered anyone crossing the tracks at Cliffside Drive. There might have been no warning from the crossing system at all.

Second, there is a need to deter others from committing a similar offense. Shunting became a significant problem last year in Western Washington, and if these incidents were to continue, it would only be a matter of time before the more serious possible consequences materialized. It is hard enough to accept when a derailment happens by chance or mistake; for one to be caused by deliberate misconduct would be beyond the pale. Imposing a

---

[1] *See* https://www.seattletimes.com/seattle-news/train-carrying-crude-oil-derails-near-custer-whatcom-county.

[2] *See* https://www.seattletimes.com/nation-world/amtrak-cross-country-train-derails-near-town-in-montana.

GOV'T SENT. MEMO
NO. CR 20-215 RSM - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Guidelines sentence would send a strong message that this exceptionally dangerous conduct is wholly unacceptable.

To the defendant's credit, they pleaded guilty and accepted responsibility for the offense. They have no prior criminal convictions. In addition, it seems clear from various evidence that the co-defendant, Reiche, was the leader among the two. It was Reiche, not Brooks, who drove to the scene that night, and Reiche, not Brooks, holding the bag of wire and tools. These factors are incorporated into the Guidelines calculation for Brooks, including by the application of a minor-role reduction. With the resulting range of 12 to 18 months, a term at the low end is the appropriate sentence that adequately accounts for the important Section 3553(a) factors at stake.

### B. Supervised Release

The government joins the Probation Office in recommending that the Court impose three years of supervised release. The government supports the conditions of supervision proposed by Probation. This term of supervised release will help ensure that Brooks keeps their life moving in a positive direction after this extremely troubling offense.

//

GOV'T SENT. MEMO
NO. CR 20-215 RSM - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**III. Conclusion**

For all these reasons, the Court should sentence Brooks to a year and a day in prison and three years of supervised release.

Dated: October 1, 2021.  Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

/s/  Philip Kopczynski
THOMAS M. WOODS
PHILIP KOPCZYNSKI
SOK JIANG
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-4073
thomas.woods2@usdoj.gov
philip.kopczynski@usdoj.gov
sok.jiang@usdoj.gov

GOV'T SENT. MEMO
NO. CR 20-215 RSM - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970